United States District Court
District of Massachusetts

```
_____
                                  )
TORLI H. KRUA,                    )
         Plaintiff,               )
                                  )
         v.                       )    Civil Action No.
                                  )    09-10081-NMG
UNITED STATES DEPARTMENT OF       )
HOMELAND SECURITY, PRESIDENT      )
GEORGE W. BUSH, MICHAEL           )
CHERTOFF, JANET NAPOLITANO and    )
TOM RIDGE,                        )
         Defendants.              )
_____ )
```

MEMORANDUM & ORDER

GORTON, J.

Pro se plaintiff Torli Krua ("Krua") brings suit against the United States Department of Homeland Security ("DHS") and various high-ranking executive branch officials for claims arising out of the immigration status of certain Liberian citizens. Before the Court is the government's motion to dismiss and Krua's motion to amend.

I.   Factual Background

In 1989, Liberia was plunged into civil war and many citizens fled the country. As a result of the turmoil, in March, 1991, the United States Attorney General granted all Liberians in this country the opportunity to register for temporary protected status ("TPS"). In general, TPS provides temporary protection to foreigners in the United States when unsafe conditions exist in

their home countries.  By statute, the Attorney General was
originally authorized (and now the Secretary of Homeland Security
is authorized) to designate a foreign state for TPS in the event
of an ongoing armed conflict, a natural disaster or other
extraordinary and temporary conditions and thereby allow aliens
to remain in this country temporarily.  See 8 U.S.C. § 1254a(b).
Once designated, nationals of that country may apply for TPS and,
if it is granted, may remain in the United States during the
period of their country's designation.  Id. § 1254a(a)(1).  They
may obtain authorization to work but cannot qualify for other
benefits such as welfare or food stamps.  Designations last for
periods of 6 to 18 months at the end of which the Secretary of
Homeland Security reviews the conditions in the foreign state and
determines whether to continue the designation.  Id.
§ 1254a(b)(2), (3).  When TPS is terminated, individuals return
to the immigration status held before TPS was allowed (unless
their status changed in the interim).  If an individual was an
illegal alien previously, therefore, she reverts to that status
and is expected to depart or be subject to removal.

Liberia's TPS designation was renewed every year from 1991
until it was terminated in September, 1999.  Liberians were,
however, spared the usual consequence of such a termination and
were allowed to remain in the United States.  President Clinton
determined that, for foreign policy reasons, they should be

protected under a mechanism called deferred enforced departure ("DED"). The effect of DED is essentially the same as TPS and Liberians were eligible for employment authorization and not subject to removal. DED was extended a few times until, in 2002, the government re-designated Liberia as a TPS state.

That most recent TPS designation was effective October 1, 2002 and thus applied to all Liberian nationals living continuously in the United States from that point forward. The designation was renewed several times until, in September, 2006, DHS determined that it was no longer supported by the conditions in Liberia. The designation was scheduled to terminate effective September 30, 2007 but most Liberians have again been afforded ongoing temporary relief. President Bush initially granted them DED and President Obama has renewed the DED grant twice (currently due to expire in September, 2011). DED is, however, only applicable to individuals who were under a grant of TPS in September, 2007 which, in turn, only encompassed Liberians who have continuously resided in the United States since the TPS effective date of October 1, 2002.

The latter distinction is, according to Krua, critical and the basis for his suit. In June, 2003, fighting in Liberia had escalated and President Bush deployed the military to increase security at the embassy and to evacuate American citizens. Krua alleges that several evacuated Americans were children with at

least one Liberian parent (e.g., those born while their parents were studying in the United States).  Along with those children, the military also evacuated certain Liberian parents.  The parents were given temporary visas and, Krua claims, were told by the American embassy that they would be granted TPS upon arrival in the U.S.

Because the original grant of TPS and its subsequent renewals only applied to Liberians living in the United States since October, 2002, however, those Liberian parents have been continuously denied TPS (and presumably their visas have since expired).  Their plight has become Krua's crusade for the past seven years.  He is a Baptist minister in Boston, Massachusetts and a Liberian refugee himself.  He alleges that he helped to welcome airlifted families to Boston in 2003 and, since that time, has cared for them at his church.  Without the ability to obtain work authorization, however, the refugee parents are unable to fend for themselves and Krua has spent considerable time on what he calls "motherly tasks" to assist.

Krua is, in the final analysis, outraged by the fact that many Liberians have been afforded protection since 1991 while Liberians airlifted to this country in 2003 to protect their American children are denied those same benefits.  He claims that he has exhausted all avenues for administrative relief.  In November, 2003, he persuaded both United States Senators and all

House Representatives from Massachusetts to co-sign a letter to the Secretary of Homeland Security asking him to extend TPS to Liberians who arrived after October, 2002.  The Secretary apparently was not persuaded by Krua's arguments.

In his motion to amend, Krua also references the recent earthquake in Haiti and the fact that TPS has been afforded only to Haitians in the United States prior to the date of the earthquake.  Again, he believes that there should be an exception for Haitian kin who may need to accompany vulnerable American citizens (i.e., the young and the elderly) back to this country.

Krua asks this Court 1) to declare presidential orders granting DED only to certain Liberians as unconstitutional violations of the Equal Protection Clause, 2) to hold defendants liable for "all damages and losses" including expenses incurred by Krua while serving refugees who have been unlawfully denied protected status under 8 U.S.C. § 1254a and 3) to enter an injunction to stop such policies and retroactively compensate the victims for losses suffered.

## II.  Procedural History

Krua filed his complaint on January 16, 2009.  In October, 2009, the government responded with a motion to dismiss and, on March 9, 2010 that motion was allowed as unopposed.  Shortly thereafter, however, the government informed that Court it had received several filings from the plaintiff, including an

opposition to its motion to dismiss, which were not properly docketed. Those filings, dated February 25, 2010, were 1) a motion to amend the complaint, 2) a memorandum in support thereof and 3) an opposition to the government's motion to dismiss. The filings have since been properly docketed.

On April 9, 2010, Krua filed what he captioned as another opposition to the government's motion to dismiss. What he actually seeks, however, is reconsideration of the government's motion to dismiss taking into account the arguments presented in his first, previously-undocketed opposition. In light of the plaintiff's pro se status, the Court will consider the merits of the government's motion to dismiss, plaintiff's opposition thereto and plaintiff's motion to amend.

III. **Analysis**

  A.   **The Government's Motion to Dismiss**

    1.   **Legal Standard**

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). In considering the merits of a motion to dismiss, the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. Langadinos v. American Airlines, Inc., 199 F.3d 68, 69 (1st Cir. 2000). If the facts in

the complaint are sufficient to state a cause of action, a motion to dismiss the complaint must be denied. Nollet v. Justices of the Trial Court of Mass., 83 F. Supp. 2d 204, 208 (D. Mass. 2000) aff'd, 248 F.3d 1127 (1st Cir. 2000).

Although a court must accept as true all of the factual allegations contained in a complaint, that doctrine is not applicable to legal conclusions. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). Threadbare recitals of the legal elements, supported by mere conclusory statements, do not suffice to state a cause of action. Id.

### 2. Application

Krua seeks monetary and injunctive relief and, although his complaint is obscure, he apparently brings claims for 1) interference with the free exercise of his religion and religious duties in violation of the First Amendment, U.S. Const., amend. I, 2) violation of the Equal Protection Clause of the Fourteenth Amendment, U.S. Const., amend. XIV, by denying TPS protection to relatives of vulnerable Americans who are similarly situated to Liberians afforded such protection and 3) failing to extend TPS benefits to Liberians who arrived in this country after October 1, 2002 when conditions in Liberia warranted such a designation pursuant to 8 U.S.C. § 1254a(b).

The government moves to dismiss Krua's complaint for 1) lack of subject matter jurisdiction, 2) failure to state a claim upon

which relief can be granted and 3) failure to effect proper

service.   With respect to the first two grounds, defendants

contend that judicial review of TPS determinations is statutorily

prohibited.   Grants of DED are, moreover, matters of "executive

grace" undertaken pursuant to the President's power to conduct

foreign relations and thus constitute non-justiciable political

questions.   In any event, defendants argue, the DED

determinations do not violate the Equal Protection Clause because

the individuals allegedly harmed do not constitute a protected

class and engendering disparate treatment based upon whether an

individual did or did not hold TPS in September, 2007 was

rational.   Defendants also argue that Krua, who has not himself

been denied TPS or DED, lacks standing to challenge the

government actions at issue.

Krua's opposition focuses on his Equal Protection argument.

He repeats his contention that similarly situated people should

not be treated differently and that defendants drew an arbitrary

line with the TPS designation that harms young Americans

evacuated with their Liberian parents.   He contends that the TPS

statute is discriminatory and that there is a compelling

government interest in protecting the welfare of American

citizens at risk.

The Court will dismiss plaintiff's complaint.   With respect

to his Equal Protection and statutory claims, Krua is, in the

final analysis, challenging the way in which the DHS, Secretaries
of Homeland Security and Presidents have administered TPS and DED
designations for Liberian citizens by drawing a line at
continuous residency beginning on October 1, 2002.  That issue
and the distinction formulated by executive officials with the
expertise and authority to make such determinations is, simply
put, not for this Court to upset.  TPS determinations are
explicitly exempted from judicial review, see 8 U.S.C. §
1254a(b)(5)(A); 8 U.S.C. § 1252(a)(2)(B)(ii), and DED extensions
from Presidents Bush and Obama have been explicitly made
"pursuant to [their] constitutional authority to conduct the
foreign relations of the United States".  The Presidents'
determinations in that regard are not for this Court to overturn
and Krua provides no authority to do so.

Moreover, the kind of line-drawing about which Krua
complains appears to be the typical course of action in TPS
cases.  In particular, when TPS designations are renewed, the
ability to register is not generally re-opened to new arrivals.
Instead, an individual must be continuously, physically present
in the United States from the effective date of the most recent
designation (here, October, 2002) to qualify.  See 8 C.F.R. §
244.2.  That provides additional support for the Court's decision
not to interfere with the decisions of DHS and the Presidents.

Although not the focus of any of the papers submitted,

Krua's First Amendment challenge also fails.  He appears to claim that his time spent assisting refugee families in their daily lives and in their immigration efforts has disrupted his personal life and interfered with his ministry.  The fact that Krua has, through his good graces, voluntarily undertaken the task of assisting certain Liberians, however, in no way establishes that a generally applicable law with respect to immigration unconstitutionally impinges on his right of free exercise of religion.

### B.    Krua's Motion to Amend

In his motion to amend, Krua seeks to add 1) President Obama as a party and 2) additional factual allegations.  His motion will be denied as moot because such allegations do nothing to resuscitate his claims.

### C.    Request for a Stay

Krua's April, 2010 opposition to defendants' motion to dismiss also requests "time to secure adequate legal counsel". The Court will not stay the case because 1) more than three months have passed since that request with no indication of Krua's efforts in that regard and 2) it would be futile.

## ORDER

In accordance with the foregoing,

1)   defendants' motion to dismiss (Docket No. 6) is
     **ALLOWED**; and

2)   plaintiff's motion to amend (Docket No. 10) is **DENIED**
     as moot.

**So ordered.**

_Nathaniel M. Gorton_
Nathaniel M. Gorton
United States District Judge

Dated July 28, 2010